# EDWARD OLSON v. R. E. SHEPHARD AND ANOTHER.[1]

January 8, 1926.

No. 24,901.

**No false representations made by defendant.**

1. The finding that no false representations were made by defendant or his agent is sustained by the evidence.

**When contract may be rescinded for mistake of one party only.**

2. While a contract cannot be reformed for the mistake of one party only, it may be rescinded for such a mistake, in proper cases, if it can be done without injury to the other party.

**Plaintiff not allowed to try action on one theory, and shift to another theory on appeal.**

3. Where a plaintiff brings an action to rescind a contract on the ground of false representations and tries it throughout on that theory, he cannot shift his ground on appeal and claim a right to rescind for a mistake on his part only.

Appeal and Error, 3 C. J. p. 723 n. 72; 4 C. J. p. 701 n. 47.
Cancelation of Instruments, 9 C. J. p. 1167 n. 73; p. 1168 n. 74.
Contracts, 13 C. J. p. 612 n. 19.
Exchange of Property, 23 C. J. p. 240 n. 82.
Reformation of Instruments, 34 Cyc. p. 915 n. 86; p. 918 n. 89, 90.

See note in 28 L. R. A. (N. S.) 900; 6 R. C. L. p. 623; 2 R. C. L. Supp. p. 167; 4 R. C. L. Supp. p. 430.
See 2 R. C. L. pp. 79, 183; 1 R. C. L. Supp. pp. 387, 428; 4 R. C. L. Supp. pp. 79, 89; 5 R. C. L. Supp. pp. 68, 78.

Action in the district court for Fillmore county to rescind a contract. The case was tried before Peterson, J., who ordered judgment in favor of defendants. Plaintiff appealed from an order denying his motion for a new trial and from the judgment. Affirmed.

*Hopp & Larson* and *Oscar C. Ronken,* for appellant.

*S. C. Pattridge,* for respondents.

[1]Reported in 206 N. W. 711.

Taylor, C.

Plaintiff had a second mortgage of $11,000 on a farm of 285 acres in Fillmore county. There was a first mortgage of $18,000. Defendant had a farm of 140 acres near Spring Valley in the same county. There was a mortgage upon it of $9,000. On August 30, 1923, they exchanged properties, plaintiff assigning his mortgage to defendant and defendant conveying his farm to plaintiff. In March, 1924, plaintiff brought this action to rescind the contract, alleging that defendant's agent, Ben Kidd, had made false representations concerning the farm. The trial court found that Kidd had made no false representations and that plaintiff had examined the farm for himself and had made the trade relying upon the knowledge obtained from his own investigation and not upon any representations made by Kidd or the defendant. Judgment was entered for defendant and plaintiff appealed therefrom.

The farm is described as the south half of the southwest quarter, the southwest quarter of the southeast quarter and the east half of the northeast quarter of the southwest quarter of section 2 in township 103 north of range 13 west. It will be seen from this description that the farm consists of three forties lying in a row east and west and of a 20-acre tract adjoining the middle 40 on the north. The farm buildings are located near the southeast corner of the middle 40. A public highway running in an easterly and westerly direction passes the buildings. The farm was occupied by Henry Winters, a tenant of defendant.

Kidd was in the real estate business and had been a friend of both plaintiff and defendant for many years. He talked with plaintiff about exchanging the mortgage for the farm and took plaintiff to the farm for the purpose of examining it. Both knew that the farm contained 140 acres, but neither had ever seen it or knew the description of the land embraced in it. They drove up to the farmhouse, and a daughter of Mr. Winters, about 15 years of age, came out to the gate. Kidd asked if her father was at home. She replied that he had gone to Spring Valley. Kidd said that they wanted to find out where the lines of the farm were and asked if

she knew. She replied that certain fences and certain rolls of fence wire, which she pointed out, were on the lines. Plaintiff and Kidd went over the land within the boundaries indicated by the girl. Plaintiff was satisfied with it, and they went to defendant at Spring Valley and closed the trade.

It subsequently developed that the lines pointed out by the girl marked the correct boundaries of three forties, but did not include the 20-acre tract. Plaintiff claims that this tract is so infested by Canada thistles and so cut by ravines that he would not have made the trade if he had known it was a part of the 140 acres. He asserts that Kidd pointed out the lines of the farm to him and deceived him by not pointing out or showing him the 20 acre tract. This is the misrepresentation claimed. Kidd denies making any representations whatever concerning the boundaries or location of the land and is corroborated by other evidence. The court found that he made no misrepresentations of any kind and this finding is amply supported by the record.

Plaintiff claims in this court that, if he is not entitled to have the contract rescinded on the ground of fraud, he is entitled to have it rescinded on the ground of mistake, for the reason that he made the trade believing he had examined the entire 140 acres and without any knowledge of the character of the 20-acre tract or that it constituted a part of the farm. Defendant knew the land embraced in the farm and described it correctly in the deed. There was no mistake on his part. The examination of the farm was apparently made without his knowledge, and there was no claim at the trial that he knew or had any reason to suspect that plaintiff had not examined the entire tract or was laboring under any misapprehension in regard to it.

It is thoroughly settled that a court cannot reform a contract on the ground of mistake unless the mistake was mutual. 23 R. C. L. 327, § 20, and the numerous cases there cited; 3 Dun. Dig. § 8329, and cases there cited.

A frequently quoted statement of the rule and of the reasons for it is that made by Chief Justice Ames in Diman v. Providence, W. & B. R. Co. 5 R. I. 130:

"A court of equity has no power to alter or reform an agreement made between parties, since this would be in truth a power to contract for them; but merely to correct the writing executed as evidence of the agreement, so as to make it express what the parties actually agreed to. It follows, that the mistake which it may correct in such a writing must be, as it is usually expressed, the mistake of *both* parties to it; that is, such a mistake in the draughting of the writing, as makes it convey the intent or meaning of neither party to the contract. If the court were to reform the writing to make it accord with the intent of one party only to the agreement, who averred and proved that he signed it as it was written by mistake, when it exactly expressed the agreement as understood by the other party, the writing, when so altered would be just as far from expressing the agreement of the parties as before; and the court would have been engaged in the singular office, for a court of equity, of doing right to one party at the expense of a precisely equal wrong to the other."

Plaintiff contends that, while the rule stated applies to actions for the reformation of contracts, it does not apply to an action for the rescission of a contract, and that a contract may be rescinded for the mistake of one party—a unilateral mistake.

While the decisions are not in harmony, the weight of authority is to the effect that a court, in the exercise of its equitable powers, may cancel a contract at the instance of a party who proves that he was mistaken as to a material element of the contract at the time he made it, if he acts promptly and the contract can be rescinded without prejudice to the other party—that is, if both parties can be placed in statu quo. This on the ground that the parties did not have the same subject matter in mind in making the contract, and did not in fact come to an agreement in respect to the same thing. Benson v. Markoe, 37 Minn. 30, 33 N. W. 38, 5 Am. St. 816; Buckley v. Patterson, 39 Minn. 250, 39 N. W. 490; Thwing v. Hall & D. Lbr. Co. 40 Minn. 184, 41 N. W. 815; Bancharel v. Patterson, 64 Minn. 454, 67 N. W. 356; St. Nicholas Church v. Kropp, 135 Minn. 115, 160 N. W. 500, L. R. A. 1917D, 741; Peterson v. First Nat.

Bank, 162 Minn. 369, 203 N. W. 53; Hearne v. N. E. Mut. M. Ins. Co. 87 U. S. (20 Wall.) 488, 22 L. ed. 395; Moffett, H. & C. Co. v. Rochester, 178 U. S. 373, 20 Sup. Ct. 957, 44 L. ed. 1108; Fehlberg v. Cosine, 16 R. I. 162, 13 Atl. 102; Brown v. Lamphear, 35 Vt. 252; Werner v. Rawson, 89 Ga. 619, 15 S. E. 813; Goodrich v. Lathrop, 94 Cal. 56, 29 Pac. 329, 28 Am. St. 91; Board v. Bender, 36 Ind. App. 164, 72 N. E. 154; Smith v. Mackin, 4 Lans. (N. Y.) 41; Long v. Athol, 196 Mass. 497, 82 N. E. 665, 17 L. R. A. (N. S.) 96.

This rule is confined within narrow limits and does not apply where the parties have changed their position so that the former state of things cannot be restored. Green v. Stone, 54 N. J. Eq. 387, 34 Atl. 1099, 55 Am. St. 577; St. Nicholas Church v. Kropp, 135 Minn. 115, 160 N. W. 500, L. R. A. 1917D, 741; Peterson v. First Nat. Bank, 162 Minn. 369, 203 N. W. 53. The mistaken party may be relieved where the other party who understood the contract to be as in fact made will lose nothing more than the benefit of his bargain. The Minnesota cases above cited show that this court has recognized that there are cases in which the rule may properly be applied, but other cases show that it has not looked with favor upon the proposition of canceling a contract for a mistake resting wholly in the mind of one party where the other party was without fault. Stong v. Lane, 66 Minn. 94, 68 N. W. 765; Streissguth v. Kroll, 86 Minn. 325, 90 N. W. 577; Vallentyne v. Immigration Land Co. 95 Minn. 195, 103 N. W. 1028, 5 Ann. Cas. 212; C. H. Young & Co. v. Springer, 113 Minn. 382, 129 N. W. 773; Thompson v. E. I. Dupont Co. 100 Minn. 367, 111 N. W. 302.

Whether plaintiff's mistake was of a nature to justify a court in canceling the contract may be open to question, but, assuming that it was, he is not entitled to relief upon that ground on this appeal. This is a court of review, and its province is to determine whether the questions presented to the trial court for determination were correctly decided by that court. It has long been settled that, where a party tries his action on a particular theory, he cannot shift his ground in this court and assert a right to recover on a different theory. Humphrey v. Merriam, 32 Minn. 197, 20 N. W. 138; Peteler

P. Ry. M. Co. v. N. W. A. M. Co. 60 Minn. 127, 61 N. W. 1024; Moquist v. Chapel, 62 Minn. 258, 64 N. W. 567; Woodbridge v. Sellwood, 65 Minn. 135, 67 N. W. 799; Engler v. Schneider, 66 Minn. 388, 69 N. W. 139; Wessel v. Gigrich, 106 Minn. 467, 119 N. W. 242; Lindquist v. Gibbs, 122 Minn. 205, 142 N. W. 156; Penhall v. State Medical Assn. 126 Minn. 323, 148 N. W. 472; Schaefer v. Marshall Mill. Co. 133 Minn. 73, 157 N. W. 993; Northland Pine Co. v. Melin Bros. Inc. 142 Minn. 233, 171 N. W. 808; Bahneman v. Fritche, 147 Minn. 329, 180 N. W. 215; Grice v. Berkner, 148 Minn. 64, 180 N. W. 923.

Plaintiff, in his complaint, based his claim for relief on the charge of fraud, and he tried the case throughout on that theory. The claim now made that he was entitled to relief on the ground of a mistake on his part only—a unilateral mistake—does not appear to have been suggested at the trial or to the trial court. When the case was submitted at the close of the evidence the court stated:

"My position is this: That the court cannot make a bargain for these people. If the bargain was without fraud it must stand, regardless of whether one party or the other made a good or bad bargain. I have nothing to do with that. The only issue here is whether or not there was what the law determines fraud in this deal. If there was, I am asked to set aside this transfer and to restore these parties as near as can be done to the status they were in before. That is the problem I have to work out."

Neither party made any objection to this statement, or suggested that there were any other questions to be considered or determined. Plaintiff suggests here that the question of his right to recover on the ground of a unilateral mistake was presented in his motion for amended findings. Whether such a question, presented neither by the pleadings nor at the trial, may be raised by a motion for amended findings we have no need to determine, for the motion made by plaintiff does not bear out his present contention. The only amendment proposed which refers in any manner to a unilateral mistake reads:

"That plaintiff was induced to make said exchange of properties by reason of a mistake on his part in believing that the north boundary line of (the three forties here described) was the true north boundary line of said farm, and that such mistake was caused by and known to defendant who wrongfully acted thereon and took advantage thereof."

In this, plaintiff asked for a finding that he was acting under a mistake caused by, known to, and wrongfully taken advantage of by defendant—a finding to the effect that defendant had designedly perpetrated a fraud upon him. This was in line with his contention at the trial and carries no suggestion of the theory now urged.

There is no claim that defendant himself made any misrepresentations of any kind, and the court has found on ample evidence that his agent made none. Defendant stands as an innocent party who intended to make the contract exactly as it was made. It appears that he cannot return the mortgage which he received from plaintiff, for he had disposed of it before this action was begun. Whether the contract may be rescinded without substantial prejudice to him cannot properly be determined from the record of a trial which did not involve that question.

The action having been rightly decided on the theory on which it was tried, the judgment must be and is affirmed.