EDWARD J. HODGSON v. ST. PAUL PLOW COMPANY and Another.

November 28, 1899.

Nos. 11,789—(65).

**Trust Fund—Master and Servant—Liability of Servant.**

> Plaintiff claims that it has traced its property as a trust fund into the hands of the defendant Power, who, as servant, received it from his master, and held and disbursed it under his master's orders, with notice of plaintiff's rights, and knowledge that his master was insolvent. *Held*, conceding, without deciding, that plaintiff has sufficiently traced and identified the trust fund, the master, not the servant, had the possession and control of the fund, and the servant is not liable for converting the same.

Action in the district court for Ramsey county by plaintiff as receiver of the Savings Bank of St. Paul against the St. Paul Plow Company and Charles M. Power to recover $2,000 damages for conversion of the proceeds of a promissory note. The case was tried before Bunn, J., who found in favor of defendants; and from a judgment entered pursuant to the findings, plaintiff appealed. Affirmed.

*Michael & Johnston*, for appellant.

An agent or servant who, while in the employ of his principal or master, converts the property of a third person with knowledge of the facts is liable. Leuthold v. Fairchild, 35 Minn. 99. While some authorities hold the agent liable regardless of his ignorance of the rights of the owner, all agree in holding him liable where he acts with knowledge. 26 Am. & Eng. Enc. 779; Mechem, Ag. §§

573, 574. The fact that Power did not profit personally is not a defense. Hill v. Campbell, 54 Neb. 59; McPheters v. Page, 83 Me. 234; Wing v. Milliken, 91 Me. 387.

*Horton & Denegre*, for respondents.

Defendant Power did not take into his possession the money with intent to appropriate it to his own use or to deprive plaintiff of it. He might have been a mere depositary for his principal. He is not liable in trover. Loring v. Mulcahy, 3 Allen, 575; Boobier v. Boobier, 39 Me. 406; Polley v. Lenox, 2 Allen, 182, 184.

CANTY, J.[1]

The St. Paul Plow Company sold a quantity of merchandise to a certain customer, received therefor several of the promissory notes of the customer, and thereafter, on December 15, 1895, sold and transferred to the plaintiff bank one of these notes for the sum of $2,333.33. A short time before the note fell due, plaintiff delivered the note to the Bank of Minnesota for collection, in order to aid the efforts of the plow company to pay the note, or substitute other security for it, and then surrender it and said other notes to said customer, and take back from him the goods sold to him, and sell these goods, or a part of them, to a second customer, and receive other security from him. After plaintiff's note was received as aforesaid by the Bank of Minnesota, it delivered the note to the plow company; the latter surrendered it, with said other notes, to said customer, received from him therefor merchandise of the value of $12,000, sold a part of the same to said second customer for $2,700, and received his note for that amount. In the meantime the amount due plaintiff had been reduced to $2,000 by reason of a payment made to it by the plow company. Thereafter, on February 1, 1897, the plow company collected the full amount of the latter note from the second customer.

On January 20, 1897, the defendant Power was appointed general manager of the plow company, and he acted as such manager until March 11, 1897, when the plow company made an assignment in insolvency under the laws of this state for the benefit of its credit-

[1] BUCK, J., absent, took no part.

ors. Power, as such general manager, received the amount so paid on the last-named note. He then deposited $2,000 of the same in a bank, and received a certificate of deposit for the same, payable to the plow company, and used the balance of the money in paying the debts and expenses of the plow company. Thereafter, on or prior to February 20, 1897, Power notified plaintiff that he had so deposited the $2,000 as aforesaid, and thereupon plaintiff demanded from Power the certificate of deposit, but he refused to deliver the same to plaintiff. Shortly afterwards he surrendered the certificate, drew out the deposit, and before March 1, 1897, paid out all of the $2,000 in payment of other debts of the plow company, pursuant to its order. During all the time from January 20, 1897, until the plow company made its assignment, it was insolvent, and during all of that time Power knew that fact, and was informed of all the foregoing facts as they occurred, and knew all of the same at the time he drew out said deposit and disbursed the same in payment of the other debts of the plow company. It does not appear what became of the balance of the $12,000 worth of merchandise which was received back from the first customer.

On substantially this state of facts, plaintiff seeks to trace as a trust fund its note, or the proceeds thereof, into the certificate of deposit, and to have it held that the certificate of deposit was the property of plaintiff, and it demands judgment against Power for $2,000, the amount of the same, as damages for converting the same. The trial court held that plaintiff's note, or the proceeds thereof, could not be sufficiently traced as a trust fund into the certificate of deposit, and found for defendant Power. Plaintiff appeals from the judgment.

We have some doubt as to the correctness of the holding of the learned trial court that such trust fund could not properly be traced into the certificate of deposit, but we do not deem it necessary to decide that question. There is, in our opinion, another reason why the judgment should be affirmed.

Power was a mere servant of the plow company. The court finds that one Dawson was its vice president, and engaged in the management of its affairs. Whether such an executive officer would be liable in such a case as this, we need not consider. The court finds

that Power "was duly appointed. general manager," but this does not show that he was anything more than a mere servant. In contemplation of law, such a servant has no possession of or title to his master's property, and, if it was wrongfully taken away from him, he could not maintain either replevin or trover for it. Wells, Repl. §§ 115, 644; 26 Am. & Eng. Enc. 749. A servant may be a joint trespasser or a joint tort feasor in assisting his master in taking the goods wrongfully, but the servant is not liable for merely holding and refusing to deliver up goods received by him from his master, and held by him under the master's orders. Wells, Repl. § 144. See also McLennan v. Minneapolis & N. El. Co., 57 Minn. 317, 59 N. W. 628. The servant is not even a proper party defendant in such a case. Wells, Repl. § 144. The servants of the party in possession need not be made parties defendant in an action of ejectment or forcible entry (Bagley v. Sternberg, 34 Minn. 470, 26 N. W. 602), and may be removed from the premises in executing a writ of possession, though not made parties or named in the writ (2 Freeman, Exns. § 475).

If, while the $2,000 was still on deposit, and Power, as such servant, had the custody of the certificate of deposit, plaintiff had brought its action against him alone to have a trust declared in its favor upon such certificate, we are clearly of the opinion that the action could not be maintained. It would be useless to bring such an action. The plow company might discharge Power the next day after the action was commenced. Thereafter his relations to the certificate of deposit would be the same as those of any other stranger, and the action must necessarily be abortive. If plaintiff could not maintain such an action against Power while the alleged trust fund was so on deposit, it cannot maintain this action now, after the trust fund has been distributed in payment of the debts of the plow company.

Judgment affirmed.